104 F.3d 354
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES of America, Appellee,
v.
Juan Angel CHAVEZ-ALVARADO, Appellant.
 No. 96-1251.
 United States Court of Appeals, Second Circuit.
 Nov. 22, 1996.
 
 FOR APPELLANT: Darrell B. Fields, Legal Aid Society, New York, NY.
 FOR APPELLEE: Bart G. Van De Weghe, Assistant United States Attorney, Southern District of New York, New York, NY.
 Before OAKES, McLAUGHLIN and CABRANES, Circuit Judges.
 
 
 1
 This cause came on to be heard on the transcript of record from the United States District Court for the Southern District of New York and was argued.
 
 
 2
 ON CONSIDERATION WHEREOF, it is hereby ordered, adjudged, and decreed that the judgment of the district court be and it hereby is AFFIRMED.
 
 
 3
 In 1973, Chavez-Alvarado, at age 12, first entered the United States illegally from Honduras. He was caught in 1984, and deported back to his native Honduras. He illegally re-entered the United States soon thereafter. In 1987 he was arrested in Illinois on state felony charges of aggravated sexual assault, aggravated unlawful restraint, and attempted armed robbery: he had raped a woman at gunpoint in an alleyway. In May, 1988, he pled guilty to all three charges, and was sentenced to two years' imprisonment. On May 20 he was released from Illinois state custody and was subsequently deported to Honduras in June, 1989.
 
 
 4
 In late 1989, Chavez-Alvarado again illegally re-entered the United States. On June 27, 1991, he was arrested in New York, and charged in Bronx County with rape, unlawful imprisonment, and criminal possession of a weapon. He had lured a woman into an ice-cream truck he was operating, drove to a wooded area and raped her, armed with a box-cutter. In April, 1992, he was convicted of rape and sentenced to 5 to 15 years' imprisonment.
 
 
 5
 While serving his New York state sentence for rape, he was brought before a federal court on a warrant for his arrest for violations of 8 U.S.C. §§ 1326(a) and (b)(1) which provide:
 
 
 6
 (a) Subject to subsection (b) of this section, any alien who--(1) has been arrested and deported or excluded and deported, and thereafter (2) enters, attempts to enter, or is at any time found in, the United States, ... shall be fined under Title 18, or imprisoned not more than 2 years, or both.
 
 
 7
 (b) Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection--(1) whose deportation was subsequent to a conviction for commission of ... a felony (other than an aggravated felony) such alien shall be fined under Title 18, imprisoned not more than 10 years, or both ...
 
 
 8
 He was indicted, and pled guilty pursuant to a written plea agreement resulting in a base offense level of 8 with a four level enhancement because the offense involved a deportation after a conviction for a felony (U.S.S.G. § 2L1.2) and a 2 level reduction for acceptance of responsibility. Chavez's resulting offense level was 10 and he had a criminal history category of IV, resulting in a range of 15-21 months.
 
 
 9
 At the sentencing proceeding, Judge Barrington D. Parker (S.D.N.Y.) granted the government's request for an upward departure under U.S.S.G. § 5K2.0, because "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." Judge Parker reasoned that "[a] sentence higher than the otherwise applicable guideline range is necessary in order to (1) reflect the seriousness of the offense and (2) afford adequate deterrence. See 18 U.S.C. § 3553(a)(2)(A) and (B)." Judge Parker concluded that:
 
 
 10
 [i]n formulating the otherwise applicable guideline (2L1.2) the Sentencing Commission ... did not adequately consider: (1) the Offense Level appropriate for a defendant, such as Chavez-Alvarado who, while not meeting the technical definition of an aggravated felon, commits two violent rapes after two illegal entries; (2) the underlying seriousness of the offense that led to defendant's deportation, apparently focusing exclusively on the existence of a five-year sentence. See 2L1.2(7); and (3) the necessity of fashioning adequate punishment for a defendant who enters illegally, commits a serious crime and is subject to deportation in comparison to a defendant who is subject to a 16 point enhancement if he commits a serious crime, is deported and illegally re-enters the country. See 2L1.2(b)2.
 
 
 11
 Chavez-Alvarado appeals, arguing that: (1) Judge Parker's first and third reasons for upward departure were in error because they were based on factors the Sentencing Commission adequately considered in formulating U.S.S.G. § 2L1.2; (2) Judge Parker's second reason for upward departure was an improper examination of the underlying facts of the Illinois conviction under U.S.S.G. § 2L1.2; and (3) Judge Parker's purported offense level upward departure is actually a procedurally defective criminal history departure.
 
 
 12
 1. The District Court's First and Third Reasons for Departure
 
 
 13
 Chavez-Alvarado claims that in weighing the first and third reasons for the increased offense level departure, Judge Parker improperly looked at factors the Sentencing Guidelines already took into account in formulating 2L1.2.
 
 
 14
 Sentencing Guideline 2L1.2 provides that for those persons convicted of illegally entering the United States, the base offense level is 8, but "(2) [i]f the defendant previously was deported after a conviction for an aggravated felony, increase by 16 levels." "Aggravated felony," as described in section (2) means, among other things, "any crime of violence ... for which the term of imprisonment imposed ... is at least five years." U.S.S.G. § 2L1.2 Cmt. 7 (1995). Under U.S.S.G. § 5K2.0, on the other hand, the district court may sentence an individual to a term of imprisonment outside the guideline range when the district court finds that " 'there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.' " (quoting 18 U.S.C. § 3553(b))
 
 
 15
 As to Judge Parker's first reason for departing, Chavez-Alvarado argues that the Sentencing Commission did adequately consider situations in which a defendant, while not technically an aggravated felon, commits two violent rapes after two illegal entries. He notes that in Application Note 2 of 2L1.2, the Commission stated that " '[i]n the case of a defendant with repeated prior instances of deportation without criminal conviction,' an upward departure may be warranted based on [sic] Adequacy of Criminal History Category .... [t]hus, the Commission has considered this factor but concluded that it is more appropriately considered under a criminal history departure; an offense level departure is not permitted."
 
 
 16
 This argument misrepresents the Guidelines, and, is irrelevant. The Note does not require that the increased offense level be a criminal history departure, as opposed to an offense level departure. In addition, the note deals with those defendants whose prior deportations were without criminal conviction, unlike Chavez-Alvarado.
 
 
 17
 Judge Parker's third reason for an upward departure was an anomaly he perceived in the Guidelines: there is no adequate punishment for a defendant who enters illegally and then commits a serious crime that makes him subject to deportation; but a defendant is subject to a 16 point enhancement if he commits a serious crime, is deported and then illegally re-enters the country. This is true. Under § 2L1.2, when sentencing Chavez-Alvarado for his illegal 1990 re-entry, Judge Parker would have been able to look at the 1988 Illinois conviction, but the language of the Guideline neither promotes nor prohibits examination of a conviction taking place after the illegal re-entry.
 
 
 18
 Chavez-Alvarado argues that in sentencing an individual for illegal re-entry, the Sentencing Commission specifically provided an enhancement only for aggravated felony convictions occurring prior to deportation. He contends that in narrowing the enhancement in this way, the Commission determined that convictions occurring after re-entry should not be a basis for enhancement. He has no support for this strange result. There is no indication that the Sentencing Commission contemplated this scenario--where a recidivist rapist, whose first sexual attack was not an aggravated felony, is apprehended for illegal re-entry after committing a rape which does qualify as an aggravated felony. We conclude that such circumstances take this case beyond the heartland of cases, and warrants an upward departure under 5K2.0.
 
 
 19
 The first and third of Judge Parker's reasons present sufficient justification for an upward departure under § 5K2.0. See United States v. Leonard, 67 F.3d 460, 461 (2d Cir.1995). We need not address Judge Parker's second justification.
 
 
 20
 2. Criminal History Departure under § 4A1.3
 
 
 21
 Chavez-Alvarado argues that, in considering the seriousness of the Illinois offense and the fact that he has been involved in two very serious crimes, Judge Parker was departing, not by a § 5K2.0 offense level departure, but by a procedurally defective criminal history departure under § 4A1.3.
 
 
 22
 We find, however that one of Judge Parker's justifications for the departure was that the Sentencing Commission had not adequately considered the special aggravating circumstance of violent crimes committed after illegal re-entries. This is a proper justification for a departure under 5K2.0, and does not necessarily implicate the defendant's criminal history.
 
 
 23
 We have considered all of the arguments raised by Chavez-Alvarado, and find them to be without merit.
 
 
 24
 Accordingly, the judgment of the district court is AFFIRMED.